SHARON C. TULLOCH CURRIE, administratrix, vs.
LEE EQUIPMENT CORPORATION.

Suffolk. October 5, 1972. — January 8, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Negligence*, Monorail hoist.

A finding of negligence of the defendant in an action for death result-
ing when, while the plaintiff's intestate was working with a
monorail hoist on a roof, the rail tilted down toward the street
causing the intestate to fall off the roof was not warranted where,
although there was evidence that just before the accident an em-
ployee of the defendant had doubled the lifting capacity of the
hoist without adding to its counterweights or installing a guy wire
at the rear of the hoist to prevent its tipping, the evidence left it
conjectural whether the accident was due to the increased lifting
capacity not adequately offset by the counterweights and there was
no evidence of any duty of the defendant's employee to warn of
danger arising from the absence of a guy wire. [767–769]

TORT. Writ in the Superior Court dated November
21, 1967.

The action was tried before *Kalus*, J.

*George R. Halsey* for the plaintiff.

*William J. McCluskey* (*Robert P. Bigelow* with him)
for the defendant.

BRAUCHER, J. This is an action of tort for wrongful
death under G. L. c. 229, brought in the name of the
widow administratrix, Sharon C. Tulloch, on behalf of
herself, her two minor children, and a workmen's com-
pensation insurer pursuant to G. L. c. 152, § 15. The
plaintiff seeks to recover for the conscious suffering and
death of her intestate, Tulloch, a construction worker,
suffered as a result of injuries sustained when he fell
from the roof of a seven-story building while working
with a monorail hoist sold and serviced by the defendant.

The declaration contains four counts: the first is
for death, and the third is for conscious suffering. The

other two counts, for similar claims against a second defendant, were dismissed on the plaintiffs' motion. The case is before us on the plaintiff's exception to the allowance of the defendant's motion for a directed verdict on the first and third counts. We hold that the motion was properly allowed, and therefore do not consider the plaintiff's other exceptions.

We summarize the testimony, which was largely undisputed. At the time of the accident, Tulloch was one of three employees of G. Salvucci Company, Inc. (Salvucci), removing capstones from the roof of a seven-story building. They were using a monorail hoist to lower the stones from the roof to the ground. The hoist had been purchased by Salvucci from the defendant at least three years earlier, and had been modified at Salvucci's request by the attachment of four wheels to make it portable.

The hoist was designed to lift loads, carry them along a ten-foot monorail, and lower them. It was placed at the edge of the roof, with the rail horizontal and extending over the edge. A horizontal bridge beam perpendicular to the rail supported it near the edge and was in turn supported by two support poles. The rear of the monorail, away from the edge of the roof, was supported by a pole fastened in a sleeve by wing nuts and pins, so that the rail could be raised or lowered. The rear support pole forked into two legs connected to a basket in which steel plates were placed as counterweights to prevent the load from tipping the rail toward the streets. Loads were lifted by a small gasoline engine attached to the rail. They were then pushed manually toward the street, the engine moving along the rail behind the load. When the load was past the edge of the roof, it was lowered by gravity, slowed by friction brakes.

On the morning of the accident, Tulloch and Salvucci's foreman set the hoist up on the roof, and it was operated by a third employee of Salvucci, the hoist operator. The hoist would not lift the first stone, and the defendant

was telephoned for service. The defendant's mechanic went to the roof and adjusted the engine, but the hoist operated with difficulty after he left. Guido Salvucci, the boss of the company, discussed the problem with the foreman, and ordered a second pulley installed. After lunch the mechanic returned and installed a second pulley, which doubled the lifting capacity of the engine. No counterweights were added at this point, and there was no guy wire to hold the rear of the hoist.

The engine raised the next stone smoothly, but the stone would not clear the front axle of the hoist. Tulloch then adjusted the rear of the hoist to raise the rail, tightening a wing nut with a hammer. Tulloch, the foreman and the mechanic pushed the stone toward the edge of the roof. The rear of the hoist lifted up, and the rail tilted down toward the street, lifting the wheels under the counterweight basket off the roof. The stone slid rapidly toward the street end of the rail, and Tulloch went over the edge head first. After the accident the rail was separated from the rear support. This could have happened only if the bolts had not been secured tightly.

The plaintiff contends that the defendant was negligent in five respects: (1) sending an engine mechanic instead of a rigger to "double block" the hoist, (2) failing to add counterweights when the lifting capacity of the engine was doubled, (3) failing to inspect the rigging and to discover that there was no guy wire, (4) failing to test the hoist away from the edge of the roof, and (5) failing to warn Tulloch of the danger of increasing lifting capacity without adding counterweights or installing a guy wire.

Each of these contentions rests primarily on the premise that the accident resulted from increased lifting capacity not adequately offset by counterweights. But there was no evidence of the lifting capacity of the hoist, of the weight of the stones lifted, or the amount of the counterweights. In view of the undisputed evidence that the rail separated from the rear support

pole carrying the counterweights, it is at least equally likely that the accident resulted from Tulloch's failure to fasten properly the bolts holding the rail to the pole after adjusting the height of the rail. The plaintiff's expert testified that if the sleeve came off the pole the friction between the sleeve and the pole would raise the rear wheels off the roof until the sleeve separated from the pole.

In this state of the evidence, the premise that the accident resulted from lack of adequate counterweights rests in surmise and conjecture. "When the precise cause is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then a verdict should be directed against the plaintiff." *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 192, quoted with approval in *Wardwell* v. *George H. Taylor Co.* 333 Mass. 302, 305. See *Stokes* v. *Old Colony Trust Co.* 354 Mass. 776; *Dolan* v. *Suffolk Franklin Sav. Bank,* 355 Mass. 665, 669–670; *Third Natl. Bank & Trust Co.* v. *Reiter Oldsmobile, Inc.* 360 Mass. 871. This holds true, notwithstanding that an expert has testified that the cause of the accident was the defendant's negligence, if it is demonstrated that the opinion is based on speculation alone. *Callaghan* v. *R. H. White Co.* 303 Mass. 413, 416. *Brownhill* v. *Kivlin,* 317 Mass. 168, 170. *Dolan* v. *Suffolk Franklin Sav. Bank,* 355 Mass. 665, 670. *Kennedy* v. *U-Haul Co. Inc.* 360 Mass. 71, 73–74.

There was, however, some testimony indicating that the presence of a guy wire could have prevented the rail sleeve from lifting off the back of the rear support in the event the two were improperly fastened together, or prevented the hoist from tipping over in the absence of any counterweight. We must therefore consider the plaintiff's further contention that the defendant's mechanic was negligent in failing to warn Tulloch of the hazards presented by the absence of a guy wire.

There is no dispute that Tulloch's employer, Salvucci, purchased the hoist from the defendant at least three

years prior to the accident, and requested the defendant to modify the hoist to its specifications. The plaintiff does not contend that at the time of the purchase the defendant failed to supply proper instructions for the operation of the hoist. Nor is it contended that the defendant by virtue of the sale assumed any duty either to maintain or to supervise the future operation of the hoist. Although the defendant did on several occasions perform repair work for Salvucci upon request, each job was individually billed and paid for. No service contract whatever existed between the defendant and Salvucci at any time. Thus the hoist was clearly not an instrumentality under the ownership or control of the defendant. Compare *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96; *Mann* v. *Cook*, 346 Mass. 174, 176–177; *Carney* v. *Bereault*, 348 Mass. 502, 505.

The defendant's mechanic had a duty to use ordinary care in performing the requested repair work. However, the defendant was under no obligation to instruct Salvucci, a company experienced in the operation of the hoist, in the use of safety precautions against hazards unrelated to the defect which he was called upon to repair. "In the law of torts there is, in general, no duty to warn unless the person on whom the duty would be cast has some reason to suppose that a warning is needed." *Cadogan* v. *Boston Consol. Gas Co.* 290 Mass. 496, 499–500. *Drake* v. *Boston Safe Deposit & Trust Co.* 307 Mass. 399, 402–403. *Haley* v. *Allied Chem. Corp.* 353 Mass. 325, 330–331. *Levy* v. *H. E. Fletcher Co.* 356 Mass. 728.

*Exceptions overruled.*