BARBARA S. MORGAN & others[1] *vs.* ROBERT LALUMIERE
& another.[2]

Essex. March 12, 1986. — May 28, 1986.

Present: BROWN, DREBEN, & FINE, JJ.

*Negligence,* Comparative, Pedestrian, Causing loss of parental society,
Causing loss of consortium. *Parent and Child,* Companionship and
society, Support of incompetent person. *Husband and Wife,* Consortium.
*Actionable Tort. Practice, Civil,* Verdict, Instructions to jury, New trial.

At the trial of a negligence action at which evidence had been introduced
warranting a finding that the plaintiff had been negligent in crossing a
street at the time she was struck by a motor vehicle, the judge did not
err in refusing the plaintiff's request to include in an instruction to the
jury on comparative negligence a statement that the plaintiff was pre-
sumed to have been in the exercise of due care as she was crossing the
street. [265]

In a negligence action arising out of an accident in which the plaintiff was
struck by a motor vehicle, evidence that the plaintiff, knowing that the
defendant's vehicle was approaching, crossed a road at night without
glancing in the direction of the automobile as she proceeded across,
raised an issue of her negligence for the jury. [265-266]

The judge at the trial of a personal injury action was not required, on the
basis of a party's allegation that the jury had been confused in their
answers to a special verdict question, to question the jury further, where
he had already polled them as to answers they had given to the specific
question, and where there was no indication that they had not found the
facts as recorded in their answers to the questions as they appeared on
the verdict form. [266]

On appeal from the denial of a plaintiff's motion for a new trial in a personal
injury action, this court declined to order a new trial either on grounds
considered by the trial judge in the proper exercise of his discretion or

---

[1] Ivan D. Morgan, Mark D. Morgan, Jonathan C. Morgan, and Daniel
S. Morgan. The claims of Jonathan C. Morgan and Daniel S. Morgan were
voluntarily dismissed at the close of all the evidence.

[2] Joseph Lalumiere.

for other reasons not pressed by counsel before the trial judge or not raised on appeal. [266-269]

A person who is not a minor has a right to recover for loss of a parent's society and companionship through a defendant's negligence if that person is handicapped and resides in the household of his wrongfully injured parent, and is dependent upon that parent physically, emotionally, and financially. [269-270]

At the trial of a personal injury action at which the thirty year old handicapped son of a wrongfully injured parent sought to recover on a claim for the loss of society and companionship of his parent, with whom he resided, the judge erred in allowing the defendants' motion for judgment notwithstanding the verdict, based on the fact that the jury could not have found that the son was a minor, where it could be assumed that the jury, having returned a verdict in favor of the son, had found that he was physically, emotionally, and financially dependent upon the injured parent and had suffered a loss of parental society as the result of her injury, and where it was unnecessary for the judge to require as a condition of the son's recovery that the jury find that he was a minor. [270]

A plaintiff is not barred from recovering from a negligent tortfeasor the full amount of his damages for loss of consortium or parental society by reason of a jury's determination that his spouse or parent was more at fault under the comparative negligence statute than was the party being claimed against. [270-272]


CIVIL ACTION commenced in the Superior Court Department on May 10, 1983.

The case was tried before *Santo J. Ruma, J.*, sitting under statutory authority.

*Neil Rossman* for the plaintiffs.

*Philip T. Tierney* for the defendants.

FINE, J. On the evening of April 1, 1983, Barbara S. Morgan was crossing the street in front of her house in Merrimac when she was struck by a car operated by the defendant, Joseph Lalumiere. Morgan had just come from purchasing pizza for her family's dinner. She had parked her car across the road from her house, and she was carrying a large box in one hand and a bottle of soda in the other. Lalumiere, coincidentally, was also on his way to buy pizza for his family's dinner. He was operating a vehicle owned by his father, also a defendant. Morgan was seriously injured in the accident. She spent more

than five weeks in the hospital, endured two operations, and remains severely disabled. She brought suit against Lalumiere and his father alleging that her injuries were caused by Lalumiere's negligence. Morgan's husband, Ivan, joined in the suit with a claim for loss of consortium; Morgan's thirty year old severely handicapped son, Mark, added a claim for loss of parental society. The defendants in their answer alleged, among other things, that the accident was due in whole or in part to Morgan's negligence.

The jury heard the following evidence concerning how the accident occurred. It was a dark but clear night. Morgan testified that as she started across the road she looked to the right and saw headlights in the distance. She proceeded across the street looking straight ahead. When she was in the middle of the road she noticed a vehicle approaching her too closely and began to run fast, but she was hit before she could reach safety. Lalumiere testified that he had a clear and unobstructed view of the road but that he first saw Morgan when she was five to seven feet in front of his car. According to his version, when he first saw Morgan she was in the roadway, not moving, and facing her house. He applied his brakes and swerved to the left, but he was unable to avoid hitting her. There was conflicting testimony as to the degree of illumination in the area.

The jury's verdict was in the form of answers to special questions. They found that Morgan had suffered damages as a result of the accident in the amount of $160,000. They found Morgan and Lalumiere both to have been causally negligent. They attributed fifty-two percent of the fault to Morgan and forty-eight percent to Lalumiere. Consequently, in the ensuing judgment, Morgan was not awarded any damages. The jury found in favor of Ivan on his loss of consortium claim and awarded him $15,000 in damages. Judgment entered for him in that amount. The jury also found in favor of Mark on his claim, awarding him $12,500, but the judge allowed the defendants' motion for judgment notwithstanding the verdict as to that claim. Morgan moved unsuccessfully for a new trial. The plaintiffs, Morgan and her son Mark, have appealed; so also have the defendants.

1. *Morgan's Appeal*.

(a) *The instructions on comparative negligence*. Morgan's attorney made timely objection to the judge's instruction on comparative negligence because it did not include a statement that Morgan was presumed to have been in the exercise of due care as she was crossing the street. The judge did mention to the jury that the defendants had the burden of proving Morgan's negligence. Morgan relies on G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, § 1, which not only places the burden of proving a plaintiff's negligence upon the person seeking to establish such negligence but also provides that "the plaintiff shall be presumed to have been in the exercise of due care." Nothing in the statute requires, however, that the jury be told about the presumption, and the use of such language in an instruction has been commented upon with disapproval. See *Potter* v. *John Bean Div. of Food Mach. and Chem. Corp.*, 344 Mass. 420, 425-426 (1962); *Flaherty* v. *Massachusetts Bay Transp. Authy.*, 361 Mass. 853, 854 (1972).

If no evidence had been introduced warranting a finding of Morgan's negligence, the presumption would have operated, upon a proper request, to prevent that issue from going to the jury. Morgan's attorney did not take the position at the appropriate time, however, that the evidence of Morgan's negligence was insufficient to raise a jury issue. Nor do we think he would have succeeded in keeping the issue from the jury had he taken that position. Once some evidence of Morgan's negligence was presented, the presumption of the plaintiff's due care no longer had any effect. For the judge in the circumstances to have informed the jury of the presumption would have engaged him in an unnecessary and confusing theoretical discourse. Failure to give the requested instruction, therefore, was not error.

(b) *The denial of the motion for a new trial*. Morgan advances a number of bases for her contention that the judge abused his discretion in denying her motion for a new trial. First she contends that the jury's attibution of more than 50% of the fault to her was against the weight of the evidence. A review of the record convinces us that the jury's finding that Lalumiere

was causally negligent was amply supported, and no one argues to the contrary on appeal. Morgan asserted for the first time at the hearing on the motion for a new trial, and she asserts now on appeal, that not a scintilla of evidence of negligence on *her* part was introduced at trial. We disagree. Evidence that a pedestrian, knowing that a car was approaching, crossed a road at night without at least glancing in the direction of the car as she proceeded across, raises an issue of negligence for a jury. See, e.g., *Legg* v. *Bloom,* 282 Mass. 303, 304-305 (1933); *Campbell* v. *Cairns,* 302 Mass. 584, 586 (1939); *Herbert* v. *Massachusetts Bay Transp. Authy.,* 1 Mass. App. Ct. 670, 671 (1974). We may view Morgan's lapse as slight in comparison to Lalumiere's. We would hesitate, however, to substitute our judgment for that of the jury and of the trial judge, all of whom had the opportunity to view the witnesses and assess their credibility.

Second, Morgan contends that the verdict reveals confusion on the part of the jury because they answered the special verdict question about Morgan's damages even though they found greater fault on the part of Morgan than Lalumiere. What the jury did, however, was entirely consistent with the judge's instructions. They were polled as to the anwers they gave to the specific questions, and there is no indication that they did not find the facts as recorded in their answers to the questions as they appeared on the verdict form. Further questioning of the jurors by the judge was not required. See generally *Commonwealth* v. *Fidler,* 377 Mass. 192, 201-294 (1979). It does not matter that the jurors may have believed that Morgan would recover some portion of the $160,000.[3] See *Shears* v. *Metropolitan Transit Authy.,* 324 Mass. 358, 359-360 (1949). In fact, although he was not required to do so, the judge in his instructions had informed the jurors that a finding of a greater degree of negligence on Morgan's part than Lalumiere's would mean a "verdict for the defendant."

Finally, Morgan relies upon a generalized claim of manifest injustice in her quest for a new trial. Some aspects of the trial

---

[3] Two jurors wrote letters to the judge indicating such a belief.

give us pause, although they were not the subjects of proper objection by Morgan at trial and they were not argued on appeal. The judge's instructions on negligence were deficient. The entire instruction on negligence and the required standard of care is reproduced in the margin.[4] Essentially the only guidance given the jury as to the meaning of negligence was that it is the failure to use "due care." In the course of their deliberations the jury asked the judge for a further definition of negligence. Again in his supplementary instructions the judge defined negligence by describing it only as the absence of "due care." The instruction failed adequately to convey to the jurors the legal meaning of negligence.[5] Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances. Of course, a judge may elaborate upon that definition so long as what he says is consistent with the correct definition of negligence. Without at least some minimal reference to the reasonable person standard and to the attendant circumstances, however, an instruction does not adequately convey the meaning of negligence. See *Beaver* v. *Costin,* 352 Mass. 624, 626 (1967); *O'Leary* v. *Jacob Miller Co.,* 19 Mass. App. Ct. 947, 948 (1985).

We decline to award a new trial on this ground, however, for the following reasons. Morgan had two opportunities to

---

[4] "Negligence is the breach of duty on the part of one person to exercise care to protect another against injuries suffered by the person to whom the duty is owed. In other words, we could distill the elements of negligence to duty, breach, and injury.

"A defendant is negligent when he fails to use due care with respect to the plaintiff to whom he owes a duty of care and his failure to use such care is the direct and proximate cause of the injury or damage to the plaintiff.

"We are now down to four elements of negligence from what I have just said, first, there must be a duty owed by the defendants to the plaintiff; secondly, the defendants violated or breached that particular duty; and three, the plaintiff must suffer injury or damage; and four, the injury or damage must be directly related to and caused by the defendants' breach of duty."

[5] Pattern jury instructions written in language understandable to the average lay person would be helpful in avoiding errors in such basic matters. See generally Nieland, Pattern Jury Instruction (1979); Elwork, Alfini & Sales, Toward Understandable Jury Instructions, 65 Judicature 433 (1982); Schwarzer, Communicating with Juries: Problems and Remedies 69 Calif. L. Rev. 731 (1981).

object to the charge, when it was first given and when it was repeated in answer to the jurors' question, but apparently she was content to have the case go to the jury with such minimal guidance. The words "due care" at least convey some suggestion of a standard of conduct based on reasonableness. The instruction, moreover, was equally objectionable, when given, from the point of view of Lalumiere, whose negligence was also a jury issue. There was no unfairness, because the potential for harm in the instruction cut both ways, and none of the parties objected to it.

Another occurrence at trial may have confused the jurors. The judge originally instructed them to determine the percentage of negligence attributable to each of the parties, to determine the full amount of damages, and then, unless Morgan was found to be more at fault than Lalumiere, to do the appropriate calculations to reduce Morgan's damages. At sidebar the attorneys brought to the judge's attention the fact that the verdict slips had been prepared on a different basis. Without objection, therefore, the judge told the jurors to disregard the instruction he had just given about calculating the damages. Instead they were to answer the questions about the respective percentages of negligence of Morgan and Lalumiere and the question about Morgan's damages, and to do *no* calculations based upon the percentages. The judge had the option of submitting the issue of comparative negligence to the jury in either of the two ways. See *Kettinger* v. *Black & Decker Mfg. Co.,* 13 Mass. App. Ct. 993, 994-995 (1982). The potential for confusion arising out of the mid-course change from one method to the other, however, was substantial. In the absence of an objection, we do not think this occurrence requires us to take the exceptional step of awarding a new trial, but we note that it would have been better to have the verdict slips redrafted than to take the risk of confusing the jury by giving a set of complicated directions and then, almost immediately, changing them.

The attorney's closing arguments were not recorded by the court reporter, as they should have been. Thus, we are at a disadvantage in not knowing to what extent problems with the

charge may have been exacerbated or diminished as a result of what counsel said. In any event, no one objected to the absence or inactivity of the court reporter during the arguments. We have reviewed the record in detail and, although the trial was flawed in the ways we have indicated, we decline to take the extraordinary step of awarding a new trial either for reasons considered by the trial judge in a proper exercise of his discretion or for reasons not pressed by counsel before the trial judge and not raised on appeal.

2. *Mark's Appeal.*

According to the evidence presented at trial, Mark Morgan was thirty years old. He suffered from blindness, cerebral palsy, and mental retardation. He lived at home, and, before the accident, his mother took care of him because of his severe disabilities. After the accident she was unable to do so. The defendants moved for directed verdicts on Mark's claim for damages on the ground that he was not a minor. The motion was denied, and the issue was submitted to the jury. The judge instructed the jury that they could assess damages for Mark if they found that he was a minor (defined by the judge as a person below the age of eighteen) and dependent upon his mother "for economic requirements, closeness, and guidance." Morgan objected to the instruction because it made Mark's minority a condition for his recovery when the evidence was undisputed that he was not a minor. The jury returned a verdict in Mark's favor. On a motion for judgment notwithstanding the verdict, because the jury could not have found that Mark was a minor, the judge set the verdict aside.

In *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507 (1980), it was held for the first time in Massachusetts that a child may recover on a loss of parental society claim from a negligent party who causes injury to the child's parent. Accord *Reighley* v. *International Playtex Inc.,* 604 F. Supp. 1078 (D. Colo. 1985); *Berger* v. *Weber,* 411 Mich. 1 (1981); *Hay* v. *Medical Center Hosp.,* 145 Vt. 533 (1985); *Ueland* v. *Pengo Hydra-Pull Corp.,* 103 Wash. 2d 131 (1984); *Theama* v. *Kenosha,* 117 Wis. 2d 508 (1984). The court said in *Ferriter,* 381 Mass. at 516, that "children have a viable claim for loss

of parental society if they can show that they are minors dependent on the parent . . . . This dependence must be rooted not only in economic requirements, but also in filial needs for closeness, guidance, and nurture." The court went on to say, "As claims for injuries to other relationships come before us, we shall judge them according to their nature and their force." *Ibid.*

We are asked in this case to extend the category of dependent persons eligible to recover on loss of consortium claims to include one who is not a minor but who is a handicapped person who resides in the household of his wrongfully injured mother and who is dependent upon her physically, emotionally, and financially. We think that such a limited extension would be consistent with the humane policies underlying the *Ferriter* decision, and with related principles recognized in statutes and case law concerning the rights of adult handicapped children. See, e.g., *Herrick's Case,* 217 Mass. 111 (1914); *Feinberg* v. *Diamant,* 378 Mass. 131, 133-137 (1979) (divorced parent can be required to contribute to the support of a mentally retarded or physically incapacitated adult child). See also G. L. c. 229, §§ 1 and 2, and G. L. c. 152, § 32(*c*); Annot., Parent's Obligation to Support Adult Child, 1 A.L.R. 2d 910, § 5 at 921 (1948 and Supp. 1985); *Sudduth* v. *Scott,* 394 So. 2d 536, 537 (Fla. 1981).

It was pointless and somewhat confusing for the judge to require as a condition of Mark's recovery that the jury find that he was a minor when the evidence was indisputably to the contrary. The verdict is not necessarily invalid, however. If the jury followed the judge's instructions, they considered separately the question of Mark's dependency on his mother. Having found in Mark's favor, the jury may be assumed to have found the necessary relationship and injury. The instruction about minority we regard as surplusage. We therefore vacate the judgment which the judge entered against Mark notwithstanding the verdict and reinstate the jury verdict in his favor.

3. *Lalumieres' Appeal.*

The Lalumieres appeal from the judgment which entered in favor of Ivan on his loss of consortium claim. They base their

appeal on the contention that because Morgan was found to be more than fifty percent negligent she is barred from recovering damages for her injuries. The defendants also oppose any entry of judgment in favor of Mark on the same ground. To our knowledge, this issue has not been dealt with previously by an appellate court in Massachusetts. In none of the decided cases was the injured spouse or parent of the party seeking damages for loss of consortium or parental society found to be more than fifty percent negligent.

A loss of consortium or parental society claim in Massachusetts is viewed as a separate and distinct cause of action, independent of the claim of the injured spouse or parent, and, while the negligence of such spouse or parent reduces his own damages in proportion to his degree of fault, the consortium or parental society damages are *not* reduced in proportion to the injured spouse or parent's degree of fault. *Feltch* v. *General Rental Co.*, 383 Mass. 603, 606-610 (1981). See also *Olsen* v. *Bell Tel. Labs. Inc.*, 388 Mass. 171, 176-177 (1983); *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 539, 543-544 (1984). In *Feltch*, the plaintiff's spouse was thirty-seven and one-half percent negligent, yet the plaintiff was allowed to recover for his full loss of consortium. The court noted that it had said in *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 157 (1973), that "the fact that [the wife] had been previously defeated in her negligence action against the same defendant was irrelevant to the husband's action [for loss of consortium] and could not be used therein to support a plea of res judicata." *Feltch* v. *General Rental Co.*, 383 Mass. at 607. It follows, we think, that a party is not barred from recovering from a negligent tortfeasor for his independent injury because his spouse or parent was more at fault than the party being claimed against. The court in *Feltch* was influenced in reaching its decision both by the general rule that negligence of one family member is not imputed to another and by the language of the Massachusetts comparative negligence statute which provides that "in determining by what amount a negligent plaintiff's damages are to be diminished, 'the negligence of each plaintiff

shall be compared to the total negligence of all persons against whom recovery is sought.' G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, § 1." *Feltch* v. *General Rental Co.,* 383 Mass. at 608. Neither Ivan nor Mark Morgan, of course, was found to be negligent.

We recognize that, carried to its extreme, such a rule may have incongruous results. A party only slightly at fault could be compelled to compensate a claimant for his full loss notwithstanding a high degree of contributory fault on the part of the claimant's spouse or parent. There is precedent in other States, however, for a rule permitting recovery by a plaintiff of the full amount of his loss even though his spouse may have been considerably more at fault than the party being sued. See *Lantis* v. *Condon,* 95 Cal. App. 3d 152 (1979) (spouse was eighty percent negligent); *Christie* v. *Maxwell,* 40 Wash. App. 40 (1985) (spouse was sixty-two and one-half percent negligent). See also *Fuller* v. *Buhrow,* 292 N.W. 2d 672, 674-676 (Iowa 1980), holding that one spouse may recover damages even though the other spouse, injured in an accident as a result of the defendant's negligence, was barred from recovering because of contributory negligence. Moreover, other accepted tort principles permit similar results. There are many instances in which a party may be held liable for a portion of a loss sustained by an injured party although that share is out of proportion to his degree of fault. See generally *Zeller* v. *Cantu,* 395 Mass. 76 (1985).

The defendants rely on *Fidler* v. *E.M. Parker Co.,* 394 Mass. 534, 547-548 (1985), in their effort to convince us that there is a "pervasive interrelationship" between a loss of consortium claim and the claim of an injured spouse. The decision in that case, however, that husband and wife stood "on the same footing . . . for the purposes of [the] loss of consortium claim" was based upon the specific facts of that case. *Id.* at 548. We are not persuaded by anything in the *Fidler* case that the *Feltch* rule does not apply to a case in which the claimant's spouse or parent was more than fifty percent negligent. The result we reach is logically compelled, we think by *Feltch.* If there is the potential for an unfair result in an extreme case, the Legislature may reform the rule.

The order for judgment for the defendants on the claim of Mark Morgan is reversed, and judgment shall enter for him in the amount of $12,500, with interest. In all other respects, the judgments entered in the Superior Court are affirmed.

*So ordered.*