CATHERINE BARBOSA & others [1] vs. HOPPER FEEDS, INC.,
& others. [2]

Norfolk.  December 7, 1988. — April 18, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Negligence*, Manufacturer, Duty to warn, Causing loss of parental society.
*Parent and Child*, Companionship and society. *Evidence*, Declaration
of deceased person. *Practice, Civil*, Amendment.

In a negligence action, a defendant's motion for directed verdicts and for
    judgments notwithstanding the verdicts were properly denied, where the
    evidence supported the jury's findings that the defendant had negligently
    designed an automatic feeder device that increased the danger posed by
    a beveling machine and that the defendant negligently failed to warn of
    the increased danger. [613-615]
At the trial of a negligence action, the judge properly declined to give three
    jury instructions, as requested by one defendant, where the instructions
    were inapplicable to the facts of the case. [615-617]
Where, at the trial of a negligence action, a minor plaintiff's claims for loss
    of parental society were unsupported by any evidence of her filial needs,
    the defendants' motions for directed verdicts or for judgments not-
    withstanding the verdicts should have been allowed. [617-619]
There was no error at a civil trial in the judge's exclusion of evidence con-
    sisting of the declaration of a deceased person, where the judge found
    that the declaration was not made in good faith as required by G. L.
    c. 233, § 65. [619-620]
The judge at the trial of a civil action improperly allowed, on the day the jury
    were empaneled, the plaintiff's unduly delayed motion to amend the
    complaint to add direct claims against a third-party defendant. [620-622]

CIVIL ACTION commenced in the Superior Court Department
on December 24, 1981.

The case was tried before *Roger J. Donahue, J.*

---

[1] John P. Barbosa, her husband, and their three minor children, Ann
Margaret Barbosa, Jennifer Barbosa, and Joshua Barbosa.

[2] Armstrong World Industries, Inc., and Cincinnati Milacron, Inc.

The Supreme Judicial Court granted a request for direct appellate review.

*Lane McGovern* for Cincinnati Milacron, Inc.

*John P. Ryan* (*Robert G. Eaton* with him) for Hopper Feeds, Inc.

*Martin T. Sullivan* for Armstrong World Industries, Inc.

*Andre A. Sansoucy* (*John W. Brister, Richard L. Neumeier & Harley S. Gordon* with him) for the plaintiffs.

HENNESSEY, C.J. The three defendants appeal from judgments entered against them in this action for personal injury to Catherine Barbosa, and for loss of consortium by her husband and their three minor children. Catherine Barbosa's injury occurred on January 16, 1981, while she was operating a machine for her employer, Armstrong World Industries, Inc. (Armstrong). The defendant Cincinnati Milacron, Inc. (CM), manufactured the machine in 1942. Armstrong purchased the machine in 1948, and subsequently added an automatic feeder manufactured by Hopper Feeds, Inc. (Hopper). The judgments entered against Hopper and CM are for both the personal injury and consortium claims; the judgments against Armstrong are for the consortium claims only.[3]

The judge submitted special questions to the jury. The jury returned verdicts for Catherine Barbosa against CM and Hopper in the amount of $860,000, and attributed 11% of the negligence to her, 44% to CM, and 45% to Hopper. On the consortium claims of the other plaintiffs, the jury assessed damages totalling $364,500 against Armstrong, CM, and Hopper, including an award of damages totalling $17,500 to Ann Margaret Barbosa, Catherine Barbosa's disabled daughter. The three defendants appealed. We granted defendant CM's petition for direct appellate review.

---

[3] Under the terms of her employment with Armstrong, Catherine Barbosa was covered by workers' compensation insurance and, consequently, any common law claim against Armstrong for her injury was barred. G. L. c. 152, § 24, as amended through St. 1955, c. 174, § 5. However, at the time of the injury, consortium claims of the husband and children were not barred by G. L. c. 152, § 24. See *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 529-530 (1980). But see G. L. c. 152, § 24, as amended through St. 1986, c. 662, § 18, which, in such circumstances, now bars consortium claims.

Catherine Barbosa injured her hand while operating a machine which beveled "cots" — small cylindrical pieces of rubber used in the textile industry. The machine contained a rotating wheel with spindles projecting from it. Cots were loaded onto the spindles which rotated the cots into contact with grinding wheels. Barbosa's duties included loading the feeder which placed the cots on the spindles, supplying boxes to receive the finished cots, and starting and stopping the machine as needed.

CM originally manufactured the machine as a grinder in 1942. Armstrong purchased it in 1948 and had CM modify it by adding the spindle wheel. Armstrong subsequently modified the machine several times, changing the machine from a grinder to a beveler, altering the device which loaded the cots onto the spindles, and adding a cot guide. A few weeks before the accident, Armstrong added an automatic feeder manufactured by Hopper, with technical advice from Hopper.

Immediately before her injury occurred, Catherine Barbosa shut off the feeder but left the beveler running. She reached her right hand into the machine to pick up a cot which had fallen onto the base of the machine; she was then unable to pull her hand back out. The spindle turned, forcing her hand further into the machine, and causing several fractures and lacerations. The accident resulted in permanent and significant limitation of the use of her right hand, loss of a finger, and a very weak grasp.

1. ISSUES RAISED BY DEFENDANT HOPPER FEEDS, INC.

Hopper raises three issues on appeal: (1) the judge's denial of Hopper's motions for directed verdicts and for judgments notwithstanding the verdicts on the ground that Hopper owed no duty to guard the beveling machine or to warn Catherine Barbosa or Armstrong against hazards known to Armstrong; (2) the judge's failure to give certain jury instructions; and (3) the judge's denial of Hopper's motions for a directed verdict and for judgment notwithstanding the verdict with regard to Ann Margaret Barbosa's loss of consortium claim.

a. *Hopper's Motions for Directed Verdicts and for Judgments Notwithstanding the Verdicts.*

Hopper's principal contention is that Hopper had no duty to warn Catherine Barbosa of any hazards because Armstrong had superior knowledge concerning the machine and exercised exclusive control over it. In evaluating the judge's refusal to grant Hopper's motions for directed verdicts and for judgments notwithstanding the verdicts, we assess whether the evidence, construed in the light most favorable to the plaintiffs, could support verdicts for the plaintiffs. *Colter* v. *Barber-Greene Co.*, 403 Mass. 50, 54 (1988), citing *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). "It is axiomatic that, in reviewing the denial of the defendant's motions for directed verdict and judgment notwithstanding the verdict, we will construe the evidence most favorably to the plaintiff[s] and disregard that favorable to the defendant." *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 326 (1982). The plaintiffs are entitled to the judgments if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff[s]." *MacDonald* v. *Ortho Pharmaceutical Corp.*, 394 Mass. 131, 140-141, cert. denied, 474 U.S. 920 (1985). *Poirier* v. *Plymouth, supra* at 212. *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). We conclude that the evidence below supported a jury finding that Hopper negligently designed the automatic feeder and thereby increased the danger posed by the machine, and negligently failed to warn of the increased danger.

The plaintiffs presented evidence at trial to show that the automatic feeder was defective, and that it increased the danger posed by the machine. Hopper agreed to design and build a feeder which would feed cots onto the spindles of the beveling machine. The purchase order provided for installation supervision and specifically stated that the unit was "guaranteed" to work with the beveling machine. An expert witness, Bradford Schofield, testified that Hopper's automatic feeder increased the danger to Catherine Barbosa because the feeder restricted the crowded area on the machine, making it more difficult to maneuver in that area, and also because the feeder caused cots to fall into the base of the machine, making it foreseeable that

an operator would insert her hand in that area to remove the cots. Schofield also testified that, at the time of the accident, it was technologically and economically feasible to guard the beveling machine. An Armstrong manager testified further that the beveling machine was modified after Catherine Barbosa's injury, suggesting the feasibility of guarding the machine. A plexiglass door was added which covered the open space on the machine and had an automatic shutoff, making it impossible for anyone to insert a hand while the machine was operating. A kickplate which would shut off the machine was also added on the front of the feeder and could be kicked with a foot or knee.

Melvin Jordan, one of the owners of Hopper Feeds, Inc., testified that he knew from the first day of the feeder's installation that if the feeder was not working properly, parts would fall down, and an operator would probably reach down to pick them up without stopping the machine. There was also evidence at trial that Hopper supervised the installation of the automatic feeder and that Hopper guaranteed that the feeder would work in conjunction with the beveling machine.

Hopper, as a product manufacturer, had a duty to anticipate the environment in which its product would be used, and to design against reasonably foreseeable risks attending the product's use in that setting. *Colter* v. *Barber-Greene Co.*, *supra* at 57 n.9. There was ample evidence from which the jury could conclude that Hopper's automatic feeder was defective because it increased the hazards posed by the beveling machine.

We have previously stated that "a manufacturer of a product, which the manufacturer knows or should know is dangerous by [its] nature or is in a dangerous condition," is under a duty to give warning of those dangers to "persons, who it is foreseeable will come in contact with, and consequently be endangered by, that product." *Slate* v. *Bethlehem Steel Corp.*, 400 Mass. 378, 381 (1987), quoting *MacDonald* v. *Ortho Pharmaceutical Corp.*, *supra* at 135, quoting *H. P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 75 (1976). See *Mitchell* v. *Sky Climber, Inc.*, 396 Mass. 629, 631 (1986) ("manufacturer . . . has a duty to warn foreseeable users of dangers in the use of

that product of which [it] knows or should have known"). Hopper argues that it had no duty to warn Barbosa or Armstrong of hazards of which Armstrong was fully aware, and cites *Fiorentino* v. *A. E. Staley Mfg. Co.*, 11 Mass. App. Ct. 428 (1981). It is true that a manufacturer has no duty to warn a plaintiff who is fully aware of the hazards posed by a product. *Id.* at 436. This is not such a case. See *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 795 (1987) (where court rejected defendant's claim that employer was in better position than manufacturer to make machine safe for its intended use because employer had owned machine for nine years and was familiar with use of product). See also *H. P. Hood & Sons* v. *Ford Motor Co.*, *supra* at 69 (plaintiff recovered for defendant's failure to warn despite evidence that defendant had informed plaintiff's employer about hazards which caused the accident).[4] The judge properly denied Hopper's motions for directed verdicts and for judgments notwithstanding the verdicts.

b. *The jury instructions on Hopper's duty to warn.*

Hopper argues that the judge below committed reversible error in refusing to give three requested jury instructions. (1) "The defendant Hopper . . . had no duty to instruct Armstrong in the use of safety precautions against hazards known to Armstrong." (2) "A manufacturer has no duty to warn of risks created solely in the use or misuse of the product of another manufacturer." (3) "Hopper . . . was entitled to assume that Armstrong would warn its employees of dangers in the use of the grinder machine of which Armstrong was aware." We conclude that the judge properly refused to give the requested instructions because each is inapplicable to the facts of this case.

---

[4] The plaintiffs cite several cases from other jurisdictions which support their contention that manufacturers are not insulated from liability for failure to warn if the plaintiff's employer is aware of the hazards or receives a warning. See, e.g., *Oman* v. *Johns-Manville Corp.*, 764 F.2d 224, 233 (4th Cir.), cert. denied sub nom. *Oman* v. *H.R. Porter Co.*, 474 U.S. 970 (1985) (upholding trial judge's refusal to charge jury in asbestos case that manufacturer's duty to warn ultimate users — employees — satisfied if sophisticated employer is aware of dangers involved in use of product); *Billsborrow* v. *Dow Chem., U.S.A.*, 139 Misc. 2d 488 (N.Y. Sup. Ct. 1988) (employer's knowledge of products' dangerous propensity does not immunize manufacturer for failure to warn employee user).

Hopper requested the first instruction based upon a statement we made in *Currie* v. *Lee Equip. Corp.*, 362 Mass. 765, 769 (1973). See also *Slate* v. *Bethlehem Steel Corp.*, 22 Mass. App. Ct. 641, 646 (1986), on further appellate review 400 Mass. 378 (1987). Those cases are, however, inapposite. In *Currie,* we stated that a defendant has no duty to instruct a company "in the use of safety precautions against hazards *unrelated to the defect which [the defendant] was called upon to repair*" (emphasis added). *Id.* at 769. Similarly, in *Slate,* the Appeals Court held that a defendant had no duty to warn a party with superior knowledge, i.e., a technical consultant who supervised the design and production of machinery which injured the plaintiff. *Slate,* 22 Mass. App. Ct. at 643-644. This court agreed with the Appeals Court's decision, stating that there was no evidence that the defendant knew of a danger that the plaintiff did not appreciate. *Slate,* 400 Mass. at 382. Hopper's third requested jury instruction similarly asserts that, as a matter of law, Hopper had no duty to warn if Armstrong was aware of the dangers posed by the machine. The defendant Hopper again relies upon *Slate* as support for its requested jury instructions. The judge properly declined to give these instructions in the absence of evidence that Armstrong had superior knowledge of the dangers posed by the machine.

Finally, the second jury instruction that Hopper requested might have been warranted if Catherine Barbosa's injury resulted from risks created by another manufacturer's product. Here, however, there was evidence that Hopper's own product was defective because it increased the risks posed by the beveling machine. See *Mitchell* v. *Sky Climber, Inc.*, 396 Mass. 629, 630 (1986) (plaintiff made no claim that motors sold by the defendant were defective in any respect). The judge instructed the jury at length on Hopper's liability, stating in part: "Was what happened foreseeable? And was there a breach of that duty of due care when [Hopper] attached the feeder to this cot grinding machine? Did [Hopper] create a risk that was not there before? Did [Hopper] increase a risk that was not there at that time?

"[Y]ou must not only find that Hopper Feeds by attaching this feeder to the cot guide machine was guilty of negligence but you must also find that there was a causal relationship. . . .

"[Y]ou must find that Hopper Feeds committed some act which created a risk or that it had a duty to protect [Catherine] Barbosa against an existing risk . . . ."

The judge's instructions to the jury as well as his refusal to give the three requested jury instructions were proper. There was no error.

    c. *Recovery by Ann Margaret Barbosa for loss of consortium.*

The defendant Hopper moved for a directed verdict and for judgment notwithstanding the verdict on Ann Margaret Barbosa's loss of consortium claim. Hopper argues that Ann Margaret, the ten year old severely disabled daughter of Catherine Barbosa, is not entitled to recover for loss of her mother's society because she was living at Lakeville Hospital rather than with her mother at the time of the accident and, more importantly, because there was a lack of necessary proof on the issue.[5] We conclude that although Ann Margaret is not barred from recovery for loss of consortium simply because she does not live at home, plaintiffs' counsel failed to introduce sufficient evidence at trial of Ann Margaret's filial needs.

According to testimony at trial, Ann Margaret suffers from brain damage and cerebral palsy, is blind, unable to walk, talk, sit up, feed herself, and to otherwise care for herself. At the time of Catherine Barbosa's accident, Ann Margaret had been living away from home for the previous four years. Catherine placed Ann Margaret at Lakeville Hospital, at a social worker's suggestion, because Catherine was pregnant and her doctor advised against carrying Ann Margaret. Catherine's difficulty in lifting and carrying Ann Margaret worsened as Ann Margaret grew older and bigger. The evidence at trial established that Ann Margaret went home on the weekends

---

[5] Armstrong and CM also moved for directed verdicts and for judgments notwithstanding the verdicts on the same ground. We address here the challenges made by the three defendants.

before the accident and that her parents love her. The weekend visits were curtailed after the accident.

We have recognized that a minor child has a strong interest in her parent's society and that a child has a right to recover for loss of a parent's society resulting from a defendant's negligence. *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 510, 516 (1980). A "child's need for parental love and nurture" is protected in this Commonwealth. *Id.* at 516, citing G. L. c. 119, §§ 1 and 24. A child has a viable claim for loss of parental society if she establishes "filial needs for closeness, guidance, and nurture." *Id.* See *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 269 (1986) (affirming jury award for loss of parental society to thirty year old man who suffered from blindness, cerebral palsy, and mental retardation and who lived at home prior to his mother's injury). A child's recovery for loss of parental society is based upon dependence on the injured parent for management of the child's needs and for emotional guidance and support rather than economic dependence on the injured parent. *Glicklich* v. *Spievack*, 16 Mass. App. Ct. 488, 496 (1983).

The defendant points to cases which suggest that a child must be living in the injured parent's household to recover for loss of parental society and argues that because Ann Margaret did not live at home, she is barred from recovery. See *Ferriter*, *supra* at 516-517 (stating that child has an interest in a parent's society and affection at least while living in the household); *Glicklich* v. *Spievak*, *supra* at 496 (sufficient if child lives in injured parent's household and is dependent). We are unwilling to rule that, as a matter of law, Ann Margaret could suffer no loss of parental society because she was not living at home. Her severe physical and mental disabilities required that she live at a facility with full-time nursing capacity.

There was, however, a total lack of evidence presented at trial by plaintiffs' counsel as to Ann Margaret's emotional or intellectual capacity, or of her filial needs for closeness, guidance, or nurture, or any other dependence on her mother.[6] Nor

---

[6] The plaintiff carries the burden of proving the existence, and impairment, of a dependency relationship between the child and parent in a loss of con-

did plaintiffs' counsel present any evidence of a causal relationship between her mother's accident and the cancellation of the weekend visits. The only evidence presented at trial concerning the relationship between Ann Margaret and her mother was that Ann Margaret went home on weekends before the accident, and that those visits were curtailed after the accident. This was insufficient. See *Ferriter, supra* at 516; *Morgan* v. *Lalumiere, supra* at 269-270 (evidence that disabled plaintiff who lived at home was taken care of by his mother before her injuries, and was physically, emotionally, and financially dependent upon his mother); *Glicklich, supra* at 496 (evidence that mother of nine year old plaintiff prepared child's meals, discussed his day with him, read him stories, and generally took an interest in his play, school, and friends).

It is fair to say that no extensive display of facts is required to demonstrate, in light of ordinary human experience, an emotional or psychological dependence by the child upon her mother. See *Ferriter, supra* at 516. We can only speculate why no such facts were offered here by plaintiffs' counsel: either such facts are not available or the claim of Ann Margaret for damages was regarded by plaintiffs' counsel as relatively less significant than the claims of the other plaintiffs.[7] This court cannot take judicial notice of these facts.

The defendants' motions for directed verdicts, and judgments notwithstanding the verdicts as to Ann Margaret Barbosa's claim should have been allowed.

2. Issues Raised by Defendant Armstrong World Industries, Inc.

Armstrong challenges the judge's exclusion of the testimony of Clifford Miller, and argues that Ann Margaret Barbosa is barred from recovery for loss of her mother's consortium. We have already addressed the loss of consortium issue and now address the exclusion of Miller's testimony.

---

sortium claim. Particularly in light of this child's severe disabilities, plaintiffs' counsel was required to establish some perception or sensitivity on Ann Margaret's part to justify an award of damages for loss of parental society. See *Ferriter, supra* at 516.

[7] The jury verdict for Ann Margaret was less than two per cent of the total verdicts awarded to the Barbosa family.

Armstrong argues that the judge below erred by excluding the testimony of Clifford Miller that Adam Kmaras, deceased, told Miller that he (Kmaras) had observed Catherine Barbosa reach underneath the machine to pick up cots, that Kmaras had told her not to do that and to simply shut down the machine if something like that happened. Kmaras was Catherine Barbosa's "set-up" man and was responsible for setting up the beveling machine to perform its intended operation. Armstrong contended below, and argues on appeal, that the testimony was admissible under G. L. c. 233, § 65 (1988 ed.), which provides: "In any action . . . , a declaration of a deceased person shall not be inadmissible in evidence as hearsay . . . if the court finds that it was made in good faith and upon the personal knowledge of the declarant."[8]

The judge excluded Miller's testimony on the ground that Kmaras's statement to Miller was not made in good faith. The evidence warranted such a conclusion. Kmaras made his alleged statement to Miller after Catherine Barbosa was injured, at a time when Kmaras had an incentive to avoid blame for the accident by claiming that he had properly instructed Barbosa. There was no error.

3. ISSUES RAISED BY DEFENDANT CINCINNATI MILACRON, INC.

The plaintiffs filed suit against Hopper in December, 1981. In August, 1984, Hopper added CM as a third-party defendant, asserting claims of contribution and indemnity. On June 8, 1987, the plaintiffs moved to amend their complaint to add direct claims against CM. A motion judge denied the motion to amend on June 19, 1987. On July 20, 1987, the plaintiffs

[8] Armstrong also argues that Miller's testimony was not hearsay because it was evidence of notice and admissible to impeach Catherine Barbosa's testimony that she had never been warned of the dangers presented by the moving parts of this machine. While Kmaras's alleged statement to Barbosa may have been evidence of notice and therefore nonhearsay, Kmaras's statement to Miller, which Armstrong sought to introduce at trial, was hearsay. Furthermore, even if Kmaras's statement to Miller is not hearsay, Armstrong never made clear at trial that it sought admission of this evidence for the limited purpose of showing notice to Catherine Barbosa rather than for the truth of the matter asserted.

moved for reconsideration by the trial judge of their motion to amend. That judge granted the motion for reconsideration and allowed the plaintiffs to amend their complaint. CM moved for a continuance, but the judge denied the motion. Jury empanelment began that same day.

CM argues on appeal that the trial judge's allowance of the plaintiffs' motion for reconsideration and motion to amend was error.[9] We agree.

The entire on the record discussion of the plaintiffs' motion for reconsideration of their motion to add CM as a defendant consisted of the following exchange: "The Court heard some argument on the matter in the lobby and also on the brief, by the defendant [CM], . . . and I see no prejudice whatsoever in allowing that plaintiff[s'] motion; and I'll save the defendant [CM's] objection to the allowance of the motion, okay." Counsel for CM moved for a continuance of one month and was interrupted by the judge, who stated simply, "[Y]ou've been in the case since 1984, and things just haven't changed since 1984." Counsel for CM responded: "Well, I believe they have, your Honor, and I believe I need the time to get ready as a prime defendant, rather than a third party defendant." The judge replied: "There's no difference between a prime defendant and a third party defendant in this case. I've made my decision and I'll save the objection."

The decision whether to allow a motion to amend a pleading is a discretionary decision and depends upon a judge's weighing of several factors. Factors to be considered in making such a decision include undue delay by the moving party, imminence of trial, and undue prejudice to the opposing party. *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288, 290 (1977), quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962). We have previously stated that unexcused delay in seeking to

---

[9] CM further objects to the judge's failure to instruct the jury regarding superseding cause, and also argues that Ann Margaret Barbosa should be barred from recovery for loss of consortium. We have already addressed the loss of consortium issue. Because we conclude that the judge erroneously allowed the plaintiffs' motion to add CM as a defendant, we do not reach CM's objection regarding the jury instructions.

amend is a valid basis for the denial of a motion to amend. *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 428 (1982). Mass. R. Civ. P. 15(a), 365 Mass. 761 (1974).

The motion judge acted well within her discretion in denying the plaintiffs' motion to amend presented five and one-half years after the plaintiffs filed their complaint and six weeks before trial. See *United States Leasing Corp.* v. *Chicopee*, 402 Mass. 228, 233 (1988) (where judge properly denied plaintiff's proposed amendment presented almost four years after original complaint and less than six weeks before trial). The plaintiffs' undue delay in pressing their claims justified the motion judge's refusal to allow the amendment, particularly because the plaintiffs, at that late date, sought to add a new defendant. *Id.*, citing *Castellucci* v. *United States Fidelity & Guar. Co.*, *supra* at 289-292, and *Bengar* v. *Clark Equip. Co.*, 401 Mass. 554, 556-559 (1988).

The trial judge, however, erred in allowing the plaintiffs' motion for reconsideration of their motion to amend. We have stated that a judge should hesitate before undoing the work of another judge. *Peterson* v. *Hopson*, 306 Mass. 597, 603 (1940). *Serody* v. *Serody*, 19 Mass. App. Ct. 411, 412 (1985). Here, the trial judge allowed a motion to reconsider and a motion to add CM as a defendant about thirty days after the motion judge had denied the motion to add CM. The trial judge did so in the absence of any evidence of changed circumstances which would justify reconsideration. We need not, and do not, say that these factors alone would require reversal, because the judge's refusal to grant a continuance further exacerbated CM's predicament. On the day of jury empanelment, CM learned that it must defend against suit by the plaintiffs and adopt a decidedly different stance as a primary defendant (arguing that CM was not liable and that Hopper was liable) from that as a third-party defendant (seeking to establish that Hopper was not liable).

4. CONCLUSION.

CM was improperly added as a primary defendant because of the unexcused delay of the plaintiffs' motion to amend as well as the imminence of trial. We vacate the judgments against

CM. The judgments against Hopper and Armstrong for Ann Margaret Barbosa's loss of consortium are also vacated. All other judgments against Hopper and Armstrong are affirmed.

Judgments entered against each of the defendants CM and Hopper for $860,000 for the injury to Catherine Barbosa. Hopper is now solely liable, subject, of course, to modification of the judgment for the 11% of fault attributed by the jury to the plaintiff. Similarly, judgments entered against each of the defendants Hopper, CM, and Armstrong for $347,500, for the consortium claims of the other plaintiffs (not including Ann Margaret Barbosa). Because CM was improperly joined as a defendant, Hopper and Armstrong are now jointly and severally liable. See G. L. c. 231B, §§ 1 and 3.[10]

Judgment for the plaintiff Catherine Barbosa (modified by 11%) against Hopper is affirmed. Judgments for the consortium plaintiffs John P., Jennifer, and Joshua Barbosa, against Hopper and Armstrong are affirmed. The judgments as to the consortium claims of Ann Margaret Barbosa are reversed and judgments shall be entered on those claims for Hopper and Armstrong. All judgments against CM are vacated.

*So ordered.*

---

[10] Although none of the parties before us has addressed the various claims for contribution and indemnity among Hopper, Armstrong, and CM, we observe in the record a note by the trial judge that these matters were reserved for future consideration.