MARY CHRISTOPHER, administratrix,[1] vs. JOHN DUFFY[2]
& others.[3]

No. 89-P-549.

Suffolk. May 24, 1990. - July 6, 1990.

Present: SMITH, KAPLAN, & FINE, JJ.

*Practice, Civil,* Complaint, Amendment, Parties. *Negligence,* Hazardous
substance.

In a civil action based on injuries suffered by a child who ingested lead
paint, the judge did not abuse his discretion in denying the plaintiff
leave to amend her complaint, six years after the cause of action ac-
crued and long after the running of the relevant statutes of limitation,
to add six defendants and to assert against them fresh theories of liabil-
ity, where the delay, in the circumstances, would have been prejudicial
to the defendants' ability to discover facts and to defend. [783-786]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 27, 1982.

A motion for leave to amend the complaint was heard by
*John L. Murphy, Jr.,* J.

*Stephen J. Kiely* for the plaintiff.

*Rory FitzPatrick (Meghan H. Magruder & David L.
Smith* with him) for Atlantic Richfield Co. & others.

KAPLAN, J. A judge of the Superior Court denied the
plaintiff's motion for leave to amend her complaint a second
time to name five companies and a trade association as de-
fendants and to assert against them fresh theories of liability.
A single justice of this court denied the plaintiff's petition

---

[1] Of the estate of Janette M. Christopher.

[2] The status of Duffy in the action is discussed below.

[3] The others, whom the plaintiff seeks to add as defendants, are Atlantic
Richfield Co., NL Industries, Inc., Eagle-Picher Industries, Inc., The
Sherwin-Williams Company, SCM Corporation, and Lead Industries
Association.

under G. L. c. 231, § 118, first par., for relief from that interlocutory decision, but granted the plaintiff leave to appeal it to a panel of this court. We now affirm the decision on the principal ground that the judge did not abuse his discretion in denying leave.

1. The action was begun on May 27, 1982. The first amended complaint presented the following case. The Christopher family, mother, father, and five children, occupied an apartment at 117 Liberty Street, in Chelsea, since sometime in 1979. On June 4, 1981, a physician examining Janette Christopher, a child under the age of six, found that she was suffering from lead poisoning. He notified the appropriate State agency, which ordered the owners of the premises to "delead" the apartment. The owners hired one John Duffy to do the job, but he is alleged to have done it so improperly as to increase the exposure to lead poisoning. On July 1, it appeared Janette's condition had worsened. She was admitted to a hospital on July 9 for "chelation" treatment (neutralizing the lead by means of other substances) and discharged on July 15. She died of pneumonia on July 20, the result, allegedly, of an infection contracted at the hospital, which she had lost the capacity to resist.

The then plaintiffs in the action were the mother, as administratrix of Janette's estate, and the mother and father individually. Named as defendants were James and Bettina Pyne, owners of 117 Liberty Street since 1978; Alfonse J. Trulli, as trustee of School Street Trust, the former owner; and John Duffy. Various conventional theories of liability were set out applicable to particular defendants, including violation of the lead poisoning prevention statute (G. L. c. 111, §§ 191 et seq.) and regulations, negligence, wrongful death in violation of G. L. c. 229, intentional infliction of emotional distress (upon the parents), and unfair or deceptive practices in violation of G. L. c. 93A. Duffy, however, had not been served with process.[4]

---

[4] The original complaint reserved a "John Doe" place which was filled in by the name John Duffy in the first amended complaint. It is indicated that the plaintiffs conducted a deposition of Duffy.

On January 12, 1987, agreements for judgment were executed in the action, by which the Pyne defendants paid $47,000 in settlement, and the trust defendant $5,000. Duffy was not involved in the settlements.[5]

On November 6, 1987, the mother, as administratrix, now captioned as the sole plaintiff, moved to amend the first amended complaint so as to drop all the original defendants except Duffy, and to bring in as defendants five companies which manufacture lead for use in lead paint, together with their trade association (see note 3, *supra*). The plaintiff withdrew her motion voluntarily on January 28, 1988, but renewed it on September 20, 1988.[6] By the proposed amendment, intended by the plaintiff to have "relation back" to the original complaint, the companies would be charged with liability in the death of Janette on the alleged grounds that they had known or should have known since the 1920's of the dangerous qualities of their products and yet negligently produced and marketed them; that they were negligent in product design, and in failing to give warning; and that they were in breach of warranty. The companies, together with the association, would be further charged with "conspiracy" in concealing from the public the hazards associated with the products. And liability of the companies, according to the amendment, should be predicated, if necessary, on a "market share" basis.[7] The judge denied leave to amend on December

---

[5]Duffy was mistakenly named in the judgment, but this was corrected.

[6]In *Bengar* v. *Clark Equip. Co.*, 401 Mass. 554, decided on January 19, 1988, the court held that an amendment should be denied which, after the period of limitations, proposed to add a party and to assert against that party a theory of liability different from that asserted in the pleading to be amended. In this view the present plaintiff's motion would have to be denied; hence the plaintiff's voluntary withdrawal of the motion. On July 14, 1988, however, legislation (St. 1988, c. 141, § 1) was approved, with an emergency preamble, revising G. L. c. 231, § 51, which in effect overruled the *Bengar* decision, and would (in the court's discretion) authorize an amendment like that in *Bengar* which was related to the basic injury although relying on a new theory of liability. Hence the present plaintiff renewed her motion. (The effect of the statute is more fully treated in *Wood* v. *Jaeger-Sykes, Inc.*, 27 Mass. App. Ct. 199 [1989].)

[7]Roughly speaking: According to this theory, if the named manufacturers, by reason of their occupation of the field, are all the manufacturers

30, 1988, filing a memorandum in which he laid stress on the prejudice to which the new defendants would be subjected by having to respond to the delayed claims now asserted against them.

We add a word on the status of Duffy in the action. Around the time of the settlements, the then plaintiffs evidently made an effort to serve process on Duffy. The docket has a "return of service" entry, indicating that Duffy was served on April 13, 1987. In point of fact, Duffy had died on November 17, 1985. Evidently the plaintiff did not learn of this fatality until some time in 1989. The plaintiff states in her brief on the present appeal, filed on June 13, 1989, that (presumably on the plaintiff's own application) one James McCusker has been appointed administrator of the estate of John Duffy, and that the plaintiff has moved to "substitute" McCusker for Duffy in the action; the motion was pending on the date of oral argument, May 24, 1990.

2. "[A] motion to amend should be allowed unless some good reason appears for denying it." *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 289 (1977). Massachusetts Rule of Civil Procedure 15(c), 365 Mass. 762 (1974), together with the 1988 revision of G. L. c. 231, § 51, by St. 1988, c. 141, § 1, means that an amendment such as that proposed here — adding a party, sounding a new theory of liability, but claiming a remedy for the injury first sued on — should be allowed with relation back, unless there is good reason to deny it. (See note 5, *supra.*) As with any proffered amendment, the court decides whether a reason is good, and therein is bound to exercise a sound discretion. See *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 621 (1989).[8]

---

that may have contributed to the condition at 117 Liberty Street, and all were negligent, but it is not possible to say which of the companies in fact were responsible, then all should be held liable in fractions corresponding to their market shares. Whether or to what extent our courts would subscribe to such a theory remains undecided. See *Payton* v. *Abbott Labs*, 386 Mass. 540, 574 (1982), and the effort to find and describe the law of the Commonwealth in *McCormack* v. *Abbott Labs*, 617 F. Supp. 1521, 1524-1529 (D. Mass. 1985).

[8]Note that G. L. c. 231, § 51, as revised, uses a "may" not a "shall" formulation.

We need not consider whether undue delay in seeking amendment can on occasion be itself sufficient to warrant a court's denying the leave. See *United States Leasing Corp.* v. *Chicopee*, 402 Mass. 228, 233 (1988); *Barbosa*, 404 Mass. at 621-622. We assume, as did the judge below, that permission to amend turns, in discretion, on whether the opposing party will be unduly prejudiced by allowance of the amendment, recognizing, however, that delay may contribute, and even contribute seriously, to cause the prejudice. See *Goulet v. Whitin Mach. Works, Inc.*, 399 Mass. 547, 550 n.3 (1987). We assume, too, that it is up to the opposing party to point to the prejudice, whether that is apparent or requires demonstration. See *Beeck* v. *Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977).

In the present case, the judge, after noting the lengthy delay, observed on the question of prejudice: "[T]he plaintiff's cause of action alleges lead paint ingestion causing lead poisoning, causing hospitalization and heightened susceptibility, causing infection, causing pneumonia, causing eventual death. As . . . the proposed new defendants [were] served six years after the cause of action arose, to defend in a case which will necessitate extensive discovery and documentation of each link of the alleged causal chain is prejudicial to these defendants." It is evident, too, that what Duffy observed and did would be important for the new defendants' defense, but Duffy has been beyond recall since 1985. So also the defendants would be interested in the actual conditions, around the critical time, of the accessible places in the apartment to which paints were applied; the lapse of years almost necessarily would obscure those facts, as it would the actual identity of the companies furnishing the lead for any of the paints. (All this is apart from the defendants' likely defenses to the charges of negligence, conscious deception, etc.)[9]

---

[9]Plaintiff's counsel states that he moved on February 24, 1987, for leave to enter the premises to preserve evidence. He then states that "[r]elevant evidence has been preserved." The new defendants were not privy to the collection of such evidence as may have been preserved. Counsel also makes the convenient statement that it was after the execution of the agreements for judgment (January 12, 1987) but before the discovery that

This is not the common case of a proposed amendment which will, if allowed, expose an existing party to a new theory of liability. Here we have parties, previously unconnected with the case, who are served long after the running of the relevant statute of limitations. The policies which support the extinguishment of claims after limitations periods speak against allowing such amendments against new defendants. Cf. *Hoch* v. *Gavan*, 25 Mass. App. Ct. 550, 553 (1988). They do not speak conclusively, but they are to be considered and weighed. For such reasons the decisions are especially sensitive to the likelihood of hardship where a tendered amendment would involve service upon and joinder of new parties. See *United States Leasing Corp.* v. *Chicopee*, 402 Mass. at 233; *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. at 622.

We note the following although not necessary to decision. The plaintiff seeks relation back to an action which survives, if it survives at all, through linkage with Duffy. Under the heading of "dilatory motive,"[10] the judge remarked on the tenuousness of the link. When judgments were entered following agreements for judgment the action was at an end; Duffy's name appeared in the caption, but he had not been served with process. He never was served. He, or rather his personal representative, is not a genuine defendant from whom any actual recovery is hoped for, but is being used, as the judge said of Duffy, "as a vehicle to revive [the mother's] complaint and initiate her claims against the lead paint companies." McCusker, the administrator, has no proper motive for allowing himself to be used as a stalking horse for the plaintiff. As far as appears, he can and should oppose the plaintiff's effort to substitute him as a defendant on the ground that service of process upon him was unduly late. See

Duffy's name had been inadvertently added (this was corrected on March 31, 1987), that counsel learned that the companies knew as early as 1920 the danger posed by their products.

[10]One of the grounds cited in *Foman* v. *Davis*, 371 U.S. 178, 182 (1962), and repeated in our cases, for refusing amendment.

*Hoch* v. *Gavan, supra.* The Duffy connection is thus no more than a figment.

On the whole it cannot be said that the judge abused his discretion by acting capriciously or arbitrarily in rejecting the amendment, and his decision will be respected.

*Order affirmed.*