**George E. PESSOTTI, Plaintiff,**

**v.**

**EAGLE MANUFACTURING COMPANY, Defendant.**

**Civ. A. No. 80–1707–K.**

United States District Court, D. Massachusetts.

Nov. 8, 1990.

Kenneth V. Kurnos, Topkins, Gaffin & Krattenmaker, Charles R. Capace, Boston, Mass., for plaintiff.

Thomas D. Burns, John J. McGivney, Burns & Levinson, Boston, Mass., for defendant.

## OPINION

KEETON, District Judge.

Before the court are defendant's post-trial motions, pursuant to Rule 50, for judgment notwithstanding a verdict for the plaintiff and, in the alternative for new trial (Docket No. 175, filed August 10, 1990). This Opinion recites, in Part I, the chronology of the injury and the course of this litigation, and addresses, in Parts II–VII, issues bearing upon the present motions.

### I.

On May 12, 1979, plaintiff was removing carpeting from his kitchen. Some of the glue that had been used to cement the carpeting to the floor stuck to the linoleum below. To remove the glue, plaintiff used gasoline as a solvent. Plaintiff brought the gasoline into his kitchen in a gasoline container designed and marketed by defendant.

Although an effective solvent, gasoline produces vapors that are extremely flammable. When these vapors came into contact with the continuously burning pilot light on plaintiff's Magic Chef stove, plaintiff was engulfed in flames.

On July 29, 1980, plaintiff sued Magic Chef, Inc., the manufacturer of the stove, asserting that Magic Chef was liable because it failed to warn plaintiff that the stove had a continuously burning pilot light and that no flammable liquids or gasses should be used near the stove. In January 1988, plaintiff settled with Magic Chef for

$15,000 (Docket No. 105, filed January 12, 1988).

In late 1984, more than four years after the filing of the initial complaint and more than five years after the accident, plaintiff's expert discovered a roll of unprinted photographic negatives in the files at the police station. One of the subsequently printed pictures was of the gasoline can used by plaintiff on May 12, 1979. From this photograph, plaintiff was able to identify the marketer of the can. Plaintiff subsequently moved to amend his complaint to add Eagle Manufacturing Company as a defendant (Docket No. 54, filed January 11, 1985). The motion was allowed on January 24th, and the amended complaint was filed February 12, 1985 (Docket No. 59); a corrected amended complaint was subsequently filed on November 26, 1986 (Docket No. 80).

Plaintiff's counsel did not bring suit against the instant defendant until almost six years after the accident. The delay was caused in part, according to plaintiff's testimony, by plaintiff's belief that the can was destroyed in the fire, and by the failure of plaintiff and others acting on his behalf (including his counsel) to discover the unprinted negatives sooner. The police report made at the time of the accident, however, stated that "Off[icer] Chandonnit arrived and took photos. He also took possession of the [gasoline] can," Tr. Ex. 102, p. 2.

In response to plaintiff's Complaint, defendant answered *inter alia* that "[t]he action is barred by the applicable statutes of limitation." Answer to Corrected Amended Complaint, Affirmative Defense No. 6 (Docket No. 97, filed November 5, 1987). *See also* Answer to Complaint, Affirmative Defense No. 2 (Docket No. 60, filed March 15, 1985). This issue was not raised again until trial.

The case was tried to a jury from July 23 to August 7, 1990. At the close of plaintiff's evidence, and again at the close of all of the evidence, defendant moved for a directed verdict. Among the grounds therein asserted was that the "action is barred by ... the applicable statute of limi-

tations." Motion for Directed Verdict, ¶ 1 (Docket No. 156, filed August 2, 1990).

The issue raised by the motion presented a close and debatable issue of law (for reasons explained in Parts V–VII, *infra* ). Because it was so close, because it was raised near the end of trial, and because extensive public and private resources had already been expended on the trial, the court did not grant the motion. Instead, pursuant to Rule 50(b), the court submitted the case to the jury "subject to a later determination of the legal questions raised by the motion." Fed.R.Civ.P. 50(b).

The jury returned a verdict for plaintiff on his negligence and breach of warranty claims in the amount of $1,170,762.82. On August 9, the court entered judgment for the plaintiff in the amount of $1,155,762.82 (the amount of the verdict less the $15,000 settlement), along with $1,356,522.94 in prejudgment interest, $75,000 for reasonable expenses and attorneys' fees under Mass.Gen.L. ch. 93A, and costs.

## II.

First I consider defendant's contention that "[t]he damages awarded are excessive." Motion for Judgment Notwithstanding the Verdict, ¶ 8.

The injuries sustained by the plaintiff in the accident of May 12, 1979 were severe. He suffered second and third degree burns over approximately 80 to 85 percent of his body. Intensive treatment extended over months, and rehabilitative treatment over years. Even after a succession of skin-grafting operations, he carries permanent, disfiguring scarring over parts of his neck, arms, legs, and torso. Physical pain and emotional trauma were extraordinary in the months of intensive treatment and remained severe over the years of rehabilitation. The scarring and its consequences are permanent.

To plaintiff's credit, he has made a remarkable recovery, both physically and emotionally. He has made no claim in this case for loss of earning capacity, or for economic loss other than past medical expenses and damage to his house and per-

sonal property, for which the jury supportably awarded $170,762.82. The only other damages claimed were for noneconomic harm. The jury finding of one million dollars ($1,000,000) is plainly supported by the evidence.

## III.

Next, I consider defendant's contentions that there was insufficient evidence to support the jury findings on liability. Motion for Judgment Notwithstanding the Verdict, ¶¶ 2, 3, 5, and 6.

Defendant contends that the evidence was insufficient to support the jury findings (1) that defendant was negligent, (2) that its negligence was a proximate cause of plaintiff's harm, (3) that defendant's product was defective, and (4) that the defect was a proximate cause of plaintiff's harm. These contentions raise close and debatable issues.

Plaintiff's factual theories of support for these four findings are all founded on the premise that the instructions and warnings in the lithography on the gasoline can, placed there by the manufacturer of the can according to the defendant's design specifications, were in violation of the standard of reasonable care (applied to the negligence claim) and made the product unreasonably dangerous and therefore defective and in breach of the implied warranty of fitness (the Massachusetts version of strict product liability). It is undisputed that the lithography on two of the four sides of the rectangular five-gallon can consisted of the following message:

**CAUTION
DO NOT STORE
FLAMMABLES
IN AUTOMOBILES
OR NEAR
FURNACES
HOT WATER HEATERS
OPEN FLAMES**

Also, it is undisputed that the following message appeared on another side of the can:

**DANGER
EXTREMELY FLAMMABLE
HARMFUL OR FATAL IF
SWALLOWED**

**Contains Petroleum Distillates. Use *only in well ventilated area*. Do not use or store near heat, sparks or flames. Avoid repeated or prolonged contact with skin or breathing of vapor. If swallowed, do not induce vomiting. Call physician immediately.**

**KEEP OUT OF THE REACH
OF CHILDREN.**

Plaintiff emphasized to the jury and court two factual theories to support findings for the plaintiff on the four critical issues. First, plaintiff argued, the directions on the can to use gasoline only in well-ventilated areas implicitly suggested that indoor use was safe. Second, he argued, the absence of any explicit warnings about pilot lights and stoves failed to call attention to the hazard of use of gasoline near a stove that had a hidden, continuously burning pilot light.

Defendant argues that whenever plaintiff was asked about what was on the can, up to the time the lithography was produced by defendant in response to a discovery demand (well after the amended complaint naming defendant was filed), plaintiff always said he had no memory of anything on the can. Only after having his memory "refreshed" by seeing this lithography did he ever say that his "refreshed memory" is that he (1) read the language about use only in well-ventilated areas, (2) interpreted it to mean he could use gasoline safely in the kitchen—even near a gas stove with a pilot light—and (3) did so because he thought the pilot light on his gas stove was not continuously burning and instead came on only when one of the controls for the oven or a burner on the top of the stove was switched to the "ON" position.

■ Of course, an essential link in the chain of reasoning on which each of plaintiff's theories depends is the credibility of the plaintiff's testimony regarding his "refreshed memory"—including what a factfinder may regard as a rather remarkable

memory of a subtly reasoned double-negative inference that because the message said "use [gasoline] only in well ventilated area," and did *not* say *not* to use it in a well-ventilated kitchen area near a stove with a pilot light, the message meant he could safely use gasoline in his kitchen. Credibility, however, is a matter for the jury's assessment, *Harrington v. United States*, 504 F.2d 1306, 1311 (1st Cir.1974). Precedents holding otherwise, even in extreme circumstances, are rare. Most such precedents are concerned, moreover, with testimony about opinions or inferences rather than about historical facts such as whether a witness did or did not read instructions or warnings and did or did not interpret them in a stated way. *See, e.g., Sultis v. General Motors Corporation,* 690 F.Supp. 100, 102–04 (D.Mass.1988) (completely unsupported conclusion of expert witness discredited by court, and court ruled that the expert testimony was insufficient to support a reasoned inference that would sustain a jury finding); *see also* 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2528 (1971) (discussion of rules that inferences cannot be based on inferences, and that in the event of equally probable inconsistent inferences, judgment must go against the party having the burden of proof). Although the issue in this case is troubling, I conclude that precedents would not support my determining that the credibility issue was not for the jury.

■ Even if all credibility issues are held to be for the jury, the inferences of negligence and breach of warranty are troubling. As a necessary antecedent to a finding of negligence or a finding of breach of warranty in these circumstances, one must first reach a finding that plaintiff's use of the can to carry gasoline into a kitchen to use it as a solvent for cleaning near a stove that the user knew was a gas stove with a pilot light, though plainly a misuse of the product (the gasoline can), was nevertheless a "foreseeable" misuse. Even viewed most favorably to the plaintiff, this is at best a close and debatable proposition.

"Foreseeability" of a particular use of a product in the law of product liability—like "foreseeability" in negligence law generally—carries some implication beyond merely that the possibility the product will be used in this way is one that the human mind can conceive. Generally, for a use (or any other event or circumstance) to be "foreseeable" as this term is used in the law of torts, including the Massachusetts law of product liability, this use must be sufficiently likely to occur, and its potential effects must be of sufficient magnitude, that an ordinarily prudent person would take it into account at the time of the act or failure to act that is being judged. It is a dubious proposition that plaintiff's theory passes muster in whatever more precise way the "foreseeability" requirement may be expressed and explained in the specific context of this case.

Still more troubling, however, is the thinness of the evidentiary support for the two findings on proximate cause.

Viewed most favorably to plaintiff, a finding of proximate cause in the circumstances of this case, under Massachusetts law, must be based on three inferences: first, that the incident that did occur—ignition of gasoline vapors produced by use of gasoline as a solvent in a kitchen and close to a gas stove with a pilot light—would not have occurred *but for* a defect (inadequacy in some identified respect of the instructions and warnings on the can); second, that this incident was a "natural and probable consequence" of inadequacy *in that identified respect* (or, expressed another way, the incident was a result within the scope of the risk by reason of which the instructions and warnings are found to be inadequate in some identified respect and the product therefore "unreasonably dangerous" and defective); and third, that the inadequacy of the instructions and warnings in *that identified respect* was a substantial factor in bringing about the harms sustained by the plaintiff. *Cf. O'Connor v. Raymark Industries, Inc.*, 518 N.E.2d 510, 513, 401 Mass. 586, 592 (1988).

No precedent based on facts closely analogous to those of the present case has been cited by either party, and the court is not aware of any. Of course, the issue as to whether evidence before the court and jury in a particular case is sufficient to survive the directed-verdict standard is one of law. It is a kind of issue of law, however, as to which no bright-lines rules are available to provide an answer; instead, one obtains guidance from precedents only by comparing the evidence before the courts in different cases and discerning patterns of decision that may aid the court in deciding the judgmental issue of applying settled rules to this case consistently with the patterns of previous decisions. The more closely similar the evidence of other cases is to the evidence in the present case, the better is the guidance they provide; the less similar, the less secure is the guidance.

My conclusion, after weighing and considering the evidence in this case in the light of all these considerations, is that the evidence is barely sufficient to present a jury question.

Defendant also contends that the evidence is insufficient to support the jury's finding that plaintiff's contributory negligence was less than defendant's negligence. Motion for Judgment Notwithstanding the Verdict, ¶ 4. Although a jury verdict for defendant on this issue would have been amply supported by evidence, I conclude that I cannot rule as a matter of law that the evidence does not support the finding the jury chose to make. This issue, too, presented a jury question.

Thus, I conclude that on the liability issues submitted to the jury, the evidence was barely sufficient and defendant's arguments that I should set aside one or more of the jury findings fails.

## IV.

Defendant argues, in the alternative, that the verdict was against the overwhelming weight of the evidence and a new trial should be granted. Motion for Judgment Notwithstanding the Verdict, ¶ 7.

I conclude, however, that the critical aspects of the evidence that are most in doubt are connected with issues of credibility regarding historical facts as to which the answer must be yes or no—those alleged historical events did or did not occur. In these circumstances, I conclude that a court cannot say the verdict is against the weight of the evidence without substituting its judgment on credibility for that of the jury.

The motion for new trial must be denied.

## V.

Remaining for consideration are issues related to statute-of-limitation defenses, which were reserved for later ruling when the motion for directed verdict was "not granted," Fed.R.Civ.P. 50(b). These issues were not in any way submitted to the jury. The relevant facts were not disputed.

Plaintiff vigorously argues that in relation to statute-of-limitation issues the equities are in his favor and the court should deny these defenses for this reason. I conclude that the argument fails on two grounds—first, that in this case the balance of equities is not such as to justify a court's refusal to apply statutes of limitation, if ever that is appropriate (Part VI, *infra*), and, second, that this case is not one in which, under precedents, it is even appropriate for the court to assess equities in deciding whether to apply the bright-line rules of the applicable statutes of limitation (Part VII, *infra*).

## VI.

■ If a court is ever free to take account of equities in determining whether to apply a statute of limitation, then in doing so it should consider not only the factors plaintiff emphasizes, many of which have been noted in Part II of this Opinion, but opposing equities as well, including at least the following:

(1) Among the basic principles underlying the law of limitation of actions is that a defendant should receive notice of plaintiff's claim within the period specified in an applicable statute of limitation, or within the statutory period plus an extension for

service (if the applicable law extends the period by the time allowed for service of a summons and complaint). Under the undisputed facts of this case, the limitation period (even if extended for service) expired in 1982 as to the negligence and warranty actions (under the applicable 3–year statute, Mass.Gen.L. ch. 260, § 2A) and in 1983 as to the Chapter 93A cause of action (under a 4–year statute, Mass.Gen.L. ch. 260, § 5A), even if the Chapter 93A action was not barred after three years because the underlying warranty action was barred. There is no evidence before the court that defendant had any kind of notice, formal or informal, actual or constructive, before early 1985.

(2) Another basic principle of the law of limitation of actions is that a plaintiff must take reasonable steps to discover the cause of his harms. In this respect the recent decision of the Supreme Judicial Court in *Bowen v. Eli Lilly & Co.*, 557 N.E.2d 739, 408 Mass. 204 (1990), is instructive, even though that case did not involve the precise issue presented here.

*Bowen* involved a plaintiff who knew she was injured but did not know of the cause of her injuries. The SJC ruled that once a reasonably prudent person would have discovered that DES was the cause of her injuries, the discovery rule stops the period during which the statute of limitation is tolled. Plaintiff in the present case is in an even less favorable position to avoid a limitation defense; even though he may have lacked knowledge of the identity of the defendant Eagle as the designer and marketer of the gasoline can, he never lacked knowledge that he had used the can to bring the gasoline into his kitchen.

■ Of course, the instant case involves issues regarding relation back of an amendment to the time the complaint was filed, rather than issues regarding application of a discovery rule. Nevertheless, *Bowen* teaches that equity is a two-sided sword. Of course, a plaintiff should be protected from statutes of limitation that run before a harm, or its cause, can be discovered, but also a defendant should be protected from untimely suits brought for ancient wrongs where a plaintiff unreasonably delayed in discovering the wrong, or its cause, or the identity of the allegedly responsible party. In this case, plaintiff never, until 1985, in any way attempted to assert any potential liability of the marketer of the gasoline can.

(3) If Fed.R.Civ.P. 15(c) governs relation back in this case—that is, if relation back is considered "procedural" rather than "substantive" under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny—then plaintiff loses under all versions of Federal Rule 15 and all interpretations of this rule in force up to the present time. *See* Part VII, *infra.* It is true, as plaintiff has argued, that the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States adopted in July 1990 a Report to the Judicial Conference recommending that the Conference approve a revision of Rule 15 (and initiate a process looking to consideration of the recommendation by the Supreme Court and Congress), which revision would, *for the first time*, provide that

[a]n amendment to a pleading relates back to the date of original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action,....

It is undisputed, however, that the proposed revision, if adopted, will not control this case. Moreover, as discussed in Part VII(C), *infra*, even if this revised rule were somehow applicable in the instant case, it is highly debatable whether plaintiff's amendment adding a new party more than two years after the running of the statute of limitation would relate back under Massachusetts law.

(4) The SJC, interpreting in 1988 Mass. R.Civ.P. 15, held that the Rule did not provide for relation back when none of the claims asserted against the new party added after the limitation period had already expired (unless extended by Rule 15) was a claim based on the same "cause" and "theory" of claim as that filed against an entirely different and unrelated party in the

earlier pleadings. *Bengar v. Clark Equipment Co.*, 517 N.E.2d 1286, 1287, 401 Mass. 554, 557–58 (1988). This was the state law in effect (a) when the original complaint was filed in this case, (b) when the amendment adding the new defendant was filed, and (c) even today unless legislation enacted in 1989 overrides this determination of Massachusetts law. Thus, plaintiff now asks this court to invoke a new legal rule that, if ever actually the law of Massachusetts, became so only in 1989, more than 10 years after his accident, more than six (or perhaps even seven) years after the time periods specified in the applicable statutes of limitation had expired, and more than five years after he first sued this defendant and first gave any kind of notice to this defendant, formal or informal, actual or constructive, of his claim.

(5) The defendant in this case had no opportunity for investigation of the circumstances of this accident and of the credibility of plaintiff's testimony about details, which testimony to say the least has been materially different at trial from what was said by him and on his behalf in depositions, pleadings, and answers to interrogatories filed before he first sued this defendant in 1985.

(6) Even with the benefit of advantages over the defendant in development of the evidence to which I referred in point (5), plaintiff's evidence, I have concluded, is barely sufficient to survive the motion for directed verdict on the four critical issues of negligence, proximate cause, breach of warranty, and proximate cause. Indeed, if my decision in this case is appealed, there is a close and debatable issue as to whether I have erred in not ordering judgment n.o.v. because of insufficiency of the evidence on these four issues.

Balancing equities is not ordinarily within a court's responsibility, or authority, in applying the law of limitation of actions. Even if it were to be decided that it is within the court's authority in this instance, however, this case is hardly an appealing one for plaintiff on the balance of equities.

Of course, there is a sense in which equities favor the plaintiff in every case in which a limitation defense bars a claim that has been decided by a jury to be otherwise meritorious. After all, it is a presumptively meritorious claim that is being barred, even if the evidence is barely sufficient to survive a motion for directed verdict. But this way of looking at the matter disregards the most fundamental reason that statutes of limitation are a part of a system of law aimed at doing justice. The principal justification for the application of any statute of limitation is that the defendant cannot have an entirely fair trial when the plaintiff delays so long in bringing his action that the defendant is at a disadvantage in investigating and defending. This justification for a statute of limitation is even more powerful when, as here, the defendant had no way of knowing even of the injury, much less the possibility of a claim, until more years had passed than the number specified in the applicable statute of limitation. The point is that the defendant, and the court and jury, have had to try a case probably materially different from the case that would have been tried had a timely action been filed. There is no way we can ever know just how different. Plaintiff's delay in bringing the action—not intentionally, but nevertheless inevitably—has deprived us of the opportunity of knowing.

## VII.

I turn, next, to stating the limitation issues in this case and explaining the way in which I conclude they must be resolved, in the light of applicable federal and state law.

As explained in Part I, plaintiff was injured in May 1979 and brought suit against Magic Chef in July 1980. Plaintiff did not amend his complaint to assert claims against Eagle Manufacturing Company until February 1985. It is undisputed that plaintiff's action against Eagle is barred unless plaintiff's amendment relates back to the original complaint filed in 1980.

## A.

Plaintiff contends that defendant was estopped from asserting its statute-of-limitation defense in its motion for directed verdict and is now estopped from asserting that defense in its motion for judgment notwithstanding the verdict.

Plaintiff states that a statute-of-limitation defense, asserted to conclude an action as a matter of law, should be raised by a pretrial motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment rather than by a motion for directed verdict or motion for judgment notwithstanding the verdict. However, none of the cases cited by plaintiff stands for the foregoing proposition, and this court is aware of no authority supporting that proposition.

■ To the contrary, there is little conceptual difference between a motion for summary judgment and a motion for directed verdict or motion for judgment notwithstanding the verdict; the main difference is the proper time for raising each of the motions. The standard for deciding all of these three types of motions is essentially the same: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *See* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2713.1 (2d ed. 1983). Thus, there is no valid reason why any issue that may properly be raised on summary judgment (including a pure issue of law) may not also be raised on a motion for directed verdict. It may be that the First Circuit has not explicitly invoked, in the particular context presented by this case, the parallel among motions for summary judgment, motions for directed verdict, and motions for judgment notwithstanding the verdict. Nevertheless, the First Circuit has at least implied that issues of law, such as the propriety of a statute-of-limitation defense, may be determined on a motion for directed verdict: "[a motion for directed verdict] ... should be granted only if, *as a matter of law,* no conclusion but one can be drawn." *Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 17 (1st Cir.1983) (emphasis added).

The conclusion that the asserted parallel is apt is supported also by a decision of the Tenth Circuit, explicitly stating that "[w]hen a 'motion to dismiss' is made in a jury trial, the motion should be treated as one for a directed verdict under rule 50(a)." *Peterson v. Hager,* 724 F.2d 851, 853 (10th Cir.1984).

Defendant has presented its statute-of-limitation defense by asserting what is in essence a legal proposition that could have been asserted in a "motion to dismiss." It has used the form of a motion for directed verdict, followed by a post-trial motion for judgment notwithstanding the verdict. Although defendant might have presented its statute-of-limitation defense earlier in this matter, for the reasons set forth above I conclude that defendant was not prohibited procedurally from asserting its defense in a motion for directed verdict and subsequently in a motion for judgment notwithstanding the verdict.

Plaintiff further states that defendant, by its conduct, "waived" its statute-of-limitation defense and was "estopped" from raising the defense at trial. Plaintiff's waiver and estoppel theories rest on the actions of defendant's previous counsel in this matter in a status conference held on May 10, 1985. At that conference, which was not recorded, plaintiff asserts that previous counsel for defendant stated that in light of the status of the then-existing case law in the First Circuit (*see* Part VII(B), *infra,* for a discussion of that case law), he would not oppose plaintiff's motion to amend, adding Eagle Manufacturing Company as a party defendant in this action.

■ Plaintiff argues that by failing to oppose plaintiff's motion to amend, defendant's previous counsel somehow implicitly waived his client's statute-of-limitation defense and led plaintiff to rely on this waiver when it prepared for trial. However, both in defendant's answer to plaintiff's amended complaint and in its corrected answer to plaintiff's corrected amended complaint defendant asserted its statute-of-limitation defense. Even if plaintiff had somehow interpreted the actions of defendant's previous counsel as having waived defen-

dant's statute-of-limitation defense, plaintiff was clearly on notice after its receipt of defendant's corrected answer to the amended complaint (which was at a time *after* the May 10, 1985 status conference) that defendant had not, in fact, waived that defense. Since, by its conduct, defendant had clearly *not* waived its statute-of-limitation defense, and since plaintiff could not have justifiably relied upon an interpretation of defense counsel's conduct as having done so, plaintiff's estoppel argument is baseless.

### B.

If the Federal Rules of Civil Procedure provide the rules of decision, it is crystal clear that plaintiff's amendment does not relate back:

> Whenever the claim or defense in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if ... *within the period provided by law for commencing the action against him*, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake naming the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c) (emphasis added).

Plaintiff, though conceding this point, asserts that relation back of amendments is a substantive rule rather than a mere procedural one, and that therefore state law—specifically, Rule 15(c) of the Massachusetts Rules of Civil Procedure—controls rather than Fed.R.Civ.P. 15(c). Plaintiff correctly states that the First Circuit so ruled in 1974, *Marshall v. Mulrenin*, 508 F.2d 39 (1st Cir.1974), as did this court in 1981, *Covel v. Safetech, Inc.*, 90 F.R.D. 427 (D.Mass.1981).

Were I writing on a slate no less clean than it was when *Covel* was before me, I would be inclined to adhere to the views I expressed in *Covel.* But the slate has more written on it now, and from the highest source in the judicial system.

In *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), the Supreme Court faced a Rule 15 controversy concerning relation back under the Federal Rules. Although neither the opinion of the Court nor the dissenting opinion addressed the *Erie* issue—plaintiff having apparently waived it before the district court—the opinion of the Court assumed that federal law governed that diversity case. Even though not essential to its decision, the Court's assumption that Federal Rule 15 provided the rule of decision is a significant *obiter dictum*—and the more so in view of the explicit reference to the *Erie* issue in the Court of Appeals' opinion. *Schiavone v. Fortune,* 750 F.2d 15, 18–19 (3d Cir. 1984).

*Schiavone* has not caused any court in this circuit to reevaluate whether *Marshall* and *Covel* remain good law. *E.g., Ciolino v. Sciortino Corp.,* 721 F.Supp. 1491, 1495 (D.Mass.1989) (noting in dicta that the First Circuit follows the "minority view that in diversity cases, federal courts follow state procedure as to relation back when state substantive law controls"); *Hernandez Moreno v. Serrano Marrero,* 719 F.Supp. 70, 71 (D.P.R.1989) (applying Puerto Rican relation back law in diversity case). *But cf. Jackson v. Seagrave Fire Apparatus, Inc.,* 660 F.Supp. 326 (D.Me.1987) (applying federal rule in diversity case without raising potential *Erie* issue). The only reported opinion calling attention to the issue did not need to resolve it because that case raised a federal question and was thus not before the court on diversity jurisdiction:

> *Schiavone* was itself a diversity action, and the Supreme Court did not even consider ... whether the state rule of relation back should be applied, but instead applied [Federal] Rule 15(c).
>
> In this case, we do not face a diversity action, however, and can avoid the question of whether to follow *Marshall* or *Schiavone.*

*Burgos Martinez v. Rivera Ortiz,* 715 F.Supp. 419, 422 (D.P.R.1989).

That *Schiavone* may be read as abrogating *Marshall* was also apparent to the Advisory Committee on Rules of Civil Procedure. As plaintiff notes, the Advisory Committee proposed in July 1990 an amendment to Rule 15(c) that favors plaintiff's position and would make the minority view in *Marshall* the rule of decision in federal courts. In explaining the recommendation, the Advisory Committee stated:

> If *Schiavone v. Fortune,* [477 U.S. 21], 106 S.Ct. 2379 [91 L.Ed.2d 18] (1986) implies the contrary [that is, a rule contrary to that of *Marshall*], ... [the amendment proposed by the Committee] is intended to make a material change in the rule.

Advisory Committee Notes of the Committee on Rules of Civil Procedure, appended to the July 1990 Proposal for Amendment of Rule 15. Although plaintiff is commended for finding so timely an authority, it does not support, and indeed undermines, plaintiff's position. The new rule, if ultimately approved, is not yet in force, and the fact that a change has been proposed only emphasizes the fact that *Schiavone* has been interpreted as being inconsistent with *Marshall.*

■ I conclude that I should follow the implicit dictum of *Schiavone.* It is the best guidance available at this time as to how the Supreme Court will decide this issue in this case, should this case come before the Court. Accordingly, I conclude that Rule 15(c) of the Federal Rules of Civil Procedure governs relation back, that plaintiff's amendment adding defendant as a party does not relate back to the filing of the original complaint, and that defendant's motion for judgment must be allowed.

### C.

■ Although it may be no comfort to plaintiff, I would reach the same result if deciding this issue on the assumption that Massachusetts law provides the relevant rule of decision.

The issue in Massachusetts law is more debatable because the state of the law on relation back of amendments adding an entirely new party has been in great flux in Massachusetts.

"Massachusetts has long had a liberal policy allowing amendments which add or substitute parties after the statute of limitations has expired." *Bengar,* 517 N.E.2d at 1287, 401 Mass. at 556.

In *Bengar,* the court ruled that an amendment does not "relate back to the date of the commencement of the action when, as here, the amendment seeks to add a new defendant after the statute of limitations has run and to allege against the new defendant a theory of liability wholly different from the theory of liability of the original complaint." *Bengar,* 517 N.E.2d at 1287, 401 Mass. at 556–57.

In that case, plaintiff was injured when he swerved to avoid collision with a motor vehicle causing the forklift that plaintiff was operating to roll over. Plaintiff first sued the driver of the motor vehicle for negligence, and later sought to amend by adding the manufacturer of the forklift under a product liability theory. The court ruled that the two causes of action "did not arise, in the words of rule 15(c), 'out of the conduct, transaction, or occurrence *set forth or attempted to be set forth in the original pleading....*'" *Bengar,* 517 N.E.2d at 1287, 401 Mass. at 557 (quoting Mass.R.Civ.P. 15(c)) (emphasis added).

In the instant case, although the two causes of action are not as distinct, plaintiff asserts two different theories of relief against the two defendants—against Magic Chef, failure to warn that the stove has a continuously burning pilot light, and against Eagle Manufacturing, failure to warn not to use gasoline near a gas stove. Thus, if *Bengar* is controlling, even under Massachusetts' more liberal doctrine, plaintiff's amendment does not relate back.

*Bengar,* though, was followed by legislation with an emergency preamble, enacted on July 14, 1988. In this amended law, the legislature provided, *inter alia,*

> In all civil proceedings, the court may at any time, allow amendments adding a party ... which may enable the plaintiff to sustain the action for the cause or for recovery for *the injury* for which the

action was intended to be brought.... Any amendment allowed pursuant to this section or pursuant to the Massachusetts Rules of Civil Procedure shall relate to the original pleading.

Mass.Gen.L. ch. 231, § 51.

In a 1989 decision the Appeals Court has stated, "[g]iven both the timing and the wording of the enactment, it is obvious that the Legislature's intent was to overrule *Bengar*." *Wood v. Jaeger–Sykes, Inc.*, 536 N.E.2d 1100, 1102, 27 Mass.App.Ct. 199, 201 (1989). *See also Christopher v. Duffy*, 556 N.E.2d 121, 122 n. 6, 28 Mass.App.Ct. 780, 782 n. 6 (1990) (the 1988 legislation "in effect overruled the *Bengar* decision").

Despite the legislative intent, as perceived by the Appeals Court, the Massachusetts Courts have continued to place some limits on the scope of Rule 15(c)'s liberal policy favoring amendment back. In *Barbosa v. Hopper Feeds, Inc.*, 537 N.E.2d 99, 106, 404 Mass. 610, 621–22 (1989), the court refused to allow an amendment presented five-and-one-half years after the original complaint and six weeks before trial:

> The decision whether to allow a motion to amend a pleading is a discretionary decision and depends upon a judge's weighing of several factors. Factors to be considered in making such a decision include undue delay by the moving party, imminence of trial, and undue prejudice to the opposing party. We have previously stated that unexcused delay in seeking to amend is not a valid basis of the denial of a motion to amend.

*Id.* (citations omitted). *See also Srebnick v. Lo–Law Transit Management, Inc.*, 557 N.E.2d 81, 86, 29 Mass.App.Ct. 45, 50 (1990) ("a judge may prevent a plaintiff from adding a defendant based upon considerations of unjustified delay, bad faith, or undue prejudice").

Similarly, in *Christopher*, the court refused to allow an amendment adding a new party.

> [A]n amendment such as that proposed here—adding a party, sounding a new theory of liability, but claiming a remedy for the injury first sued on—should be allowed with relation back, unless there is a good reason to deny it.... As with any proffered amendment, the court decides whether a reason is good, and then is bound to exercise sound discretion. *See Barbosa v. Hopper Feeds, Inc.*, 404 Mass. 610, 621, 537 N.E.2d 99 (1989).[8]
>
> [Footnote 8: "Note that G.L. c.231, § 51, as revised, uses a 'may' not a 'shall' formulation.]
>
> ... We assume, as did the judge below, that permission to amend turns, in discretion, on whether the opposing party will be unduly prejudiced by allowance of the amendment....
>
> Here, we have parties, previously unconnected with the case, who are served long after the running of the relevant statute of limitations. The policies which support the extinguishment of claims after limitations periods speak against allowing such amendments against new defendants.... They do not speak conclusively, but they are to be considered and weighed.

*Christopher*, 556 N.E.2d at 123–24, 28 Mass.App.Ct. at 783–85. Moreover, writing for the court in *Christopher*, Justice Kaplan noted that the link was especially tenuous where Duffy, the only defendant keeping the action active on the court's docket, was never served.

In the instant case, too, policies favoring extinguishment of claims after a period of time work against plaintiff's interests, especially where defendant, who, for over five years after the accident, had no idea of any injury let alone any claim that it was legally responsible was prejudiced by undue delay, and where with just a bit more diligence, plaintiff and others acting on his behalf would have discovered the crucial photographs long before the limitation period expired. Indeed, allowing relation back in these circumstances not only prejudices defendant's ability to defend, but also produces the striking consequence of accrual of prejudgment interest from the date of the *original* filing of this action. *Gill v. North Shore Radiological Associates Inc.*, 430 N.E.2d 1210, 385 Mass. 180 (1982). Defendant has thus been found liable for hun-

dreds of thousands of dollars in prejudgment interest ($589,417.80) that accrued before defendant was ever brought into this suit.

One additional complexity merits brief attention. A Massachusetts court faced with the circumstances of this case would have acted properly in denying leave to file the amended complaint. *Christopher, supra.* In contrast, acting pursuant to Federal Rules of Civil Procedure, I did allow the amended complaint. I did so, however, subject to later determination of the consequences of my allowance of the amendment. Surely, whether a federal court allows an amendment with a view to later determining its effect (given then unsettled questions of law), rather than considering all of the potential consequences of a proposed amendment before deciding whether to allow the motion to amend, is a matter of procedural law on which a United States district court may apply federal rather than Massachusetts law. Accordingly, I rule that under federal law it is appropriate for me now to declare explicitly that my procedural order was not meant to decide, and did not have the effect of deciding, the unsettled question as to whether the amendment would relate back to the time of filing of the original complaint. My present ruling has the same legal effect as vacating my order of January 1985, and if it is necessary to characterize it in this way in order to achieve the intended effect consistently with Massachusetts law, I hereby do so.

For all these reasons, defendant's Motion for Judgment Notwithstanding the Verdict must be allowed.

## ORDER

Judgment for plaintiff entered by this court on August 9, 1990, is hereby VACATED. Defendant's Motion for Judgment Notwithstanding the Verdict is ALLOWED. Final judgment for defendant shall be entered forthwith.